***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms, with modifications, the Opinion and Award of Deputy Commissioner Deluca and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission, and that the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. It is stipulated that all parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of parties.
3. In addition to the other stipulations contained herein, the parties stipulate and agree with respect to the undisputed facts listed as follows:
 a) The parties are subject to the Workers' Compensation Act.
 b) The employment relationship existed between the employee-plaintiff and employer-defendant on March 22, 2007.
 c) The insurance carrier at risk is American Insurance Company and the servicing agent is Sedgwick CMS.
 d) The date of plaintiff's injury is March 22, 2007.
 e) Employee-plaintiff's average weekly gross wage was $1,409.89; the compensation rate is $754 per week.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibits 1-5, Plaintiff's Exhibit 1, and Defendant's Exhibits 1-2.
 ***********
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of C. Thomas Gualtieri, M.D., taken on May 26, 2009.
2. Oral deposition of William C. VanNess, III, M.D., taken on June 24, 2009.
3. Oral deposition of Edward Hill, M.D., taken on January 26, 2010
 *********** *Page 3 
As set forth in the Pre-Trial Agreement and former Deputy Commissioner Deluca's August 3, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Is employee-plaintiff temporarily totally disabled as a result of the work-related accident of March 22, 2007?
2. Is the workers' compensation carrier liable for the treatment provided by Dr. VanNess for plaintiff's torticollis?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years of age. Plaintiff has his GED, and an employment history of working as a truck driver or as a heavy equipment operator. Plaintiff was employed as a vacuum customer service representative with Safety Kleen beginning in July 2004.
2. In 2005, plaintiff was involved in an ATV accident as well as another accident involving a fall off a truck. Plaintiff actively treated for those injuries with Drs. Renfroe and Campos.
3. At the hearing before former Deputy Commissioner Deluca, when asked if he had any prior injuries to his neck, plaintiff responded that on August 30, 2005, he injured himself when he fell off the back of a truck while at a CSX yard during his employment with Safety Kleen. Plaintiff further claimed that he did not file a workers' compensation claim because his Customer Service Manager, Doug Heck, told him to take a few days off and he would run *Page 4 
plaintiff's truck for him, giving plaintiff credit for all of the sales. Plaintiff claims that this action was taken by Safety Kleen to preserve their safety record and bonus.
4. Contrary to plaintiff's testimony, the medical records from Davie Medical Associates show that plaintiff reported a fall from a truck at his home.
5. The deposition testimony of Doug Heck indicates that: 1) plaintiff never reported an injury of that nature to him; 2) Mr. Heck was plaintiff's direct supervisor; 3) he would have been the person that such an injury would have been reported to; and 4) that he absolutely did not tell plaintiff to take five days off while Mr. Heck would work his truck for him. Mr. Heck further testified that Safety Kleen would terminate a person for running a truck and assigning the credit to someone else and that no one ran plaintiff's truck when he was allegedly out. The testimony of Mr. Heck is credible and is accepted as fact.
6. The M and P Docs, produced in response to Plaintiff's Second Request for Production of Documents, which are the forms drivers complete when they perform service for customers, show that the documents dated September 1, 2005 (Thursday) contain plaintiff's signature. There are no documents for that truck for September 2, 2005 (Friday) through September 6, 2005 (Tuesday), and plaintiff's name appears again beginning September 7, 2005 (September 5, 2005 was Labor Day and a holiday).
7. On January 22, 2007, plaintiff was seen by Dr. Claudia Campos at Orthopaedic Specialists of the Carolinas for neck pain. Dr. Campos' record indicates a two-year history of neck pain and that plaintiff's symptoms were getting worse. She noted that he was taking Lortab as well as a muscle relaxant at the time.
8. On March 22, 2007, plaintiff was involved in a work-related motor vehicle accident. Defendants admitted the claim as compensable and have paid plaintiff temporary total *Page 5 
disability benefits since that time at the maximum weekly compensation rate for 2007 of $754.00. Defendants also have paid for all approved, related medical treatment.
9. Following the accident, plaintiff prepared a written accident report. Plaintiff checked a box on the form indicating that he was not injured in the accident.
10. In describing the accident on that form, plaintiff wrote:
 While making a left hand turn across a two lane other driver was on the inside lane. I crossed the road with plenty of time to make my turn. She then veered to the outside lane for no apparent reason, resulting in hitting me in the rear.
11. The accident report prepared by the police officer who responded to the accident reported:
 I asked Driver Number 1 (plaintiff) what happened and he said he was turning left onto Old Tybee from Highway 80 and saw Vehicle Number 2 coming towards him. Driver Number 1 said Driver Number 2 struck the rear passenger side tires of his vehicle. I asked Driver Number 2 what happened and she said driver of Vehicle Number 1 turned in front of her.
12. Plaintiff's handwritten report and the report of the investigating officer were prepared in close proximity to the accident.
13. In his May 30, 2007 visit with Dr. Dockery, plaintiff indicated that his vehicle was stopped on the side of the road and that he had started to exit the vehicle when the other car, traveling at a speed of 74 mph, rear ended his vehicle. He further reported that he was thrown about the cab and may have suffered a loss of consciousness. Plaintiff gave this same account to a physical therapist on June 26, 2007, to Dr. VanNess on July 16, 2007, and to Dr. Hill on November 20, 2007. *Page 6 
14. Immediately following the accident, plaintiff alleged neck pain, left shoulder pain, and headaches. He was evaluated at OrthoCarolina by Dr. Theodore Belanger and by Dr. Michael Dockery.
15. On June 20, 2007, Dr. Dockery released plaintiff with a 0% permanent partial impairment rating to the left shoulder. His medical record made no reference to torticollis. Dr. Belanger released plaintiff to return to work as of four weeks from July 11, 2007, with respect to the neck. Plaintiff was released without restriction and was referred to a neurologist to address his complaints of headaches.
16. Plaintiff sought treatment on his own with William C. VanNess, III, M.D., without seeking approval from defendants. Dr. VanNess is a physical medicine physician with The Pain and Rehab Institute.
17. On July 16, 2007, Dr. VanNess evaluated plaintiff, diagnosed plaintiff with torticollis, and opined that plaintiff could not return to work. Plaintiff told Dr. VanNess that he had received no treatment at all for neck pain subsequent to his alleged August 30, 2005 injury, and that the pain had resolved in two weeks.
18. Plaintiff returned to work but was fearful of trying to drive a truck, given the stiffness in his neck, and was therefore asked to leave by his employer on August 14, 2007.
19. On August 29, 2007, Dr. Belanger reviewed the report of Dr. VanNess and disagreed, indicating that plaintiff showed no signs of a neurologic deficit, but that he did show signs of significant inappropriate illness behavior, exaggerated complaints, diffuse positive Waddell's signs, and amplified pain response. Dr. Belanger also cautioned that plaintiff's inappropriate illness behavior was "a major risk factor for him undergoing extensive over-treatment of descriptor diagnosis without substantial benefit or improvement." *Page 7 
20. On August 31, 2007, based on Dr. Belanger's report, defendants filed a Form 24 application seeking to terminate plaintiff's benefits. In response to the Form 24, on September 10, 2007, plaintiff filed a motion requesting the Commission's permission to change treating physicians to Dr. VanNess.
21. On October 9, 2007, Special Deputy Commissioner Elizabeth M. Lacy Maddox filed an order denying the Form 24 and directing that the parties agree on a physician to provide treatment. Plaintiff continued to treat with Dr. VanNess. Defendants appealed the order with a Form 33 on October 12, 2007.
22. Dr. VanNess was not accepted as a treating physician and plaintiff was eventually referred to a neurologist, Dr. Edward Hill.
23. On November 20, 2007, Dr. Hill found plaintiff to have discomfort from his neck, shoulders elevated with trapezius and posterior cervical spasm, discomfort rotating head left to right, and post concussion headaches of mixed nature. Dr. Hill also confirmed that plaintiff should not be working and that Dr. Belanger's prior release to work was only with regards to plaintiff's orthopedic injuries which had nothing to do with his torticollis, headaches, and seizure issues.
24. Dr. Hill began treating plaintiff for headaches and recommended that plaintiff continue with the Botox injections being provided by Dr. VanNess.
25. Plaintiff filed a motion on March 10, 2008, seeking a PET scan, counseling, and "continuing treatment" with Dr. Van Ness. Defendants responded and an Order was entered on March 24, 2008, by Special Deputy Commissioner Lovelace, ordering a one-time evaluation with Dr. Rifkin for counseling, a PET scan, and referral of the case to the Industrial Commission nurse's section for assistance in choosing a physician. The results of the PET scan were normal. *Page 8 
26. Following Dr. Rifkin's evaluation of claimant, defendants referred plaintiff to C. Thomas Gualtieri, M.D., at the Attention and Memory Center in Charlotte. Dr. Gualtieri is a neuropsychiatrist.
27. Dr. Gualtieri noted in the impression section of his report that plaintiff has, "overt symptoms which are typical of either conversion disorder or malingering."
28. Dr. Gualtieri went on to note that none of the results of his objective testing matched any of the diagnoses assigned by Drs. Hill and VanNess. He found that plaintiff did not sustain a serious injury, there was nothing preventing him from returning to work, and recommended that plaintiff be weaned from his narcotics by a primary care physician. Dr. Gualtieri's findings are consistent with the findings of Dr. Belanger who released plaintiff to full duty work the previous year.
29. Based on Dr. Gualtieri's conclusions, defendants filed a second Form 24 on July 7, 2008. Plaintiff responded to the Form 24 and filed another motion to treat with Dr. VanNess. Defendants responded and on August 27, 2008, Special Deputy Commissioner Henderson entered an Order indicating that a decision could not be reached on the Form 24 and the matter was referred to a formal hearing docket. She also denied plaintiff's motion to treat with Dr. VanNess.
30. On July 29, 2008, following Dr. Gualtieri's report, Dr. Hill released plaintiff from care to follow the recommendations of Dr. Gualtieri related to his medications.
31. Plaintiff continued treating with Dr. Van Ness under his health insurance until his coverage ended in January of 2009.
32. In May of 2009, plaintiff returned to Dr. Hill for treatment. Dr. Hill ordered a six-hour EEG and EMG testing. The EEG was normal and the EMG test showed some increased activity in the right neck muscles. Dr. Hill also indicated that the results of a PET scan called *Page 9 
Dr. Gualtieri's report into question and recommended a neuropsychological evaluation with Dr. Catherine Clodfelter. Defendants approved the evaluation.
33. Dr. Clodfelter was unable to assign a diagnosis to plaintiff due to his over-reporting and exaggeration of his difficulties. Dr. Clodfelter noted, "This examinee is showing no deficit in his overall intellectual ability, memory-fluency, visual-spatial or constructional skills, or executive-functions." She noted further that, "None of these weaknesses appear severe or handicapping enough to keep him from engaging in competitive employment."
34. Dr. Clodfelter deferred a diagnosis as she indicated that, "Although the examinee reports depression and psychological distress, it is difficult to reliably assign him a psychiatric diagnosis, given his consistent over-reporting and exaggeration of his difficulties."
35. Dr. Hill's medical opinion is that plaintiff's conditions of torticollis, migraine headaches, seizure-like spasms, as well as depression and anxiety, are all a result of plaintiff's accident on March 22, 2007.
36. Dr. Hill's medical opinion is that plaintiff is not at maximum medical improvement (MMI) and is currently unable to return to work as a commercial truck driver due to these medical conditions.
37. Although plaintiff's seizure activity has diminished with medication, his torticollis and headaches continue, and plaintiff suffers from depression and anxiety.
38. The Full Commission assigns greater weight to the testimony of Drs. Hill and VanNess, and less weight to the testimony of Drs. Gualtieri, Belanger, and Clodfelter.
39. The Full Commission finds by the greater weight of the evidence that plaintiff's torticollis, migraine headaches, seizure-like spasms, as well as depression and anxiety, are a consequence of his compensable injury on March 22, 2007. *Page 10 
40. The Full Commission finds by the greater weight of the evidence that plaintiff is incapable of any employment at the present time.
41. Plaintiff is not at MMI as a result of the injuries he sustained from his work-related accident of March 22, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's torticollis, migraine headaches, seizure-like spasms, as well as depression and anxiety, are a result of his compensable injury by accident on March 22, 2007. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. Based upon the totality of the credible evidence of record, and as a result of his admittedly compensable March 22, 2007 injury by accident, plaintiff is incapable of any employment at the present time and is entitled to ongoing total disability compensation at the rate of $754.00 per week until such time as he returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the compensable March 22, 2007 injury by accident, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19);97-25; 97-25.1. *Page 11 
4. Defendants shall not be responsible for payment for any treatment received by plaintiff that was provided by Dr. VanNess as he was not an authorized treating physician for plaintiff. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants' Form 24 application is hereby denied and defendants shall continue to pay to plaintiff temporary total disability compensation in the amount of $754.00 per week, subject to the prior attorney's fee award, until further Order of the Commission.
2. Dr. Edward Hill is hereby designated as plaintiff's authorized treating physician.
3. Defendants are not required to pay Dr. VanNess for his treatment of plaintiff.
4. Defendants shall pay all other medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
5. Defendants shall pay the costs.
This the 10th day of March, 2011.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1